CARROLL v. CAMPBELL et al., *Appellants*.

In Banc, June 6, 1892.

1. **Ferry:** EXCLUSIVE PRIVILEGE: CONSTITUTION. A city ordinance which granted an exclusive ferry privilege for the period of ten years is void under the constitution, article 4, section 53, which prohibits the granting of exclusive rights, privileges or immunities.

2. ———: ———: ———. Such ordinance, however, is valid, as a temporary license to operate a ferry within the city limits, and confers a property right which the law protects against any person not having a similiar license from the city.

3. ———: ———: FEDERAL CONSTITUTION: COMMERCE BETWEEN STATES. The granting of such privilege within the limits of the city is not an infringement of the constitutional power of congress to regulate commerce between the states, although the business of the ferry extended across a navigable river into another state.

4. **Ferry License:** INFRINGEMENT OF: ACTION FOR DAMAGES: STATUTE: Revised Statutes, 1889, section 5686, confers upon a legally licensed ferryman a right of action against one who intrudes on his ferry without license, and this is true, although the city ordinance under which the license was issued did not provide for a civil action, but made running a ferry without a license a misdemeanor, punishable by a fine.

5. ———: ———: ———. Nor is it a defense in such action for damages that, in a prior suit to restrain defendant from operating his ferry, plaintiff obtained a decree for an accounting for the same operations which is yet pending, for, while plaintiff can have but one satisfaction of his claim, he may pursue all the remedies given him by law.

6. **Ferry License, Transfer of:** PARTNERS. The provision in a ferry license issued to one that it shall not be transferred is not violated by the licensee's purchase of the interest of his copartner in the ferry business.

7. **Ferry License.** One suing for damages because of intrusion on his ferry franchise cannot recover for time during which it is not shown that he had a license.

8. **An Instruction** to a jury should not submit a question of law.

*Appeal from Cape Girardeau Court of Common Pleas.*
HON. MAURICE CRAMER, Judge.

REVERSED AND REMANDED.

*G. D. Reynolds* for appellants.

(1)   Section 1 of chapter 369 of the ordinance of the city of Cape Girardeau makes the running of a ferry without a license a misdemeanor, and punishes the party who violates it by a fine. This is an exclusive remedy. Respondent's only remedy at law is under the ordinance, which here takes the place of a statute, and is the statute. (2) Instructions 1 and 2 given for respondent stated the measure of damages incorrectly. Respondent has no right to make appellants liable for tolls on freight and passengers carried from the Illinois side. (3) Instruction, numbered 1, asked by appellants, to the effect that the grant to respondent of an exclusive license to ferry across the Mississippi river from the Missouri to the Illinois shore was a violation of section 8, article 1, of the constitution of the United States, should have been given, and the testimony offered by appellants that their boat was a duly licensed vessel of the United States, employed and engaged in doing a carrying trade over the Mississippi river between two states should not have been rejected, as, if proven, it gave to the appellants a right under the constitution and laws of the

United States which no court or municipal body can divest them of. (4) The ordinance in question violates clauses 3 and 18, of section 8, of article 1, and clause 5, section 9, of article 1, of the United States constitution. *Ferry Co. v. Pennsylvania*, 114 U. S. 196. (5) It has been decided by this court that the ordinance in question, in so far as it attempts to give an exclusive license, is void. *Carroll v. Campbell*, 108 Mo. 550. Therefore, instructions, numbered 2, 3, 4, asked by appellants, should have been given. (6) The court should have allowed the amendment to the answer, rendered necessary by the discovery at the trial, that during the whole period sued for respondent Carroll did not own the boat alone, but that he and one Brown were equal partners in conducting the ferry business; such an amendment was in favor of justice. Even without the amendment, the above facts appear, by appellants' own evidence, unobjected to, and instructions, numbered 5, 9 and 10, should have been given. (7) It was error for the court not to have checked counsel for respondent in [his remarks about one of the appellants. (8) The jury had no competent evidence before them on which to base any finding or calculation of damages. (9) The motions for a new trial and in arrest should have been sustained.

*J. B. Dennis* for respondent.

(1) Appellants contend that, inasmuch as the state of Missouri has delegated to the city of Cape Girardeau "the exclusive right to regulate, tax and license ferries," etc., plaintiff's only remedy for a trespass on his ferry franchise is to proceed under the city ordinances, and cites section 1, ordinance 369, of said city as the only remedy provided by it for the injuries complained of. If the city council had the exclusive

right to provide a remedy for damages in such cases, it has not done so, and it is evident that section 1, ordinance 369, was only intended to prescribe the penalty to be inflicted on those operating a ferry without a license to be recovered in the recorder's court for the benefit of the city; but the failure of the city to provide a remedy ought not defeat plaintiff's right to recover in some other action. Rule of Dwarris' Maxims (Potter's Dwarris, p. 123) says: "When statutes are made, there are some things which are exempted and fore-prized out of the provisions thereof by the law of reason, though not expressly mentioned; thus, things for necessity's sake, or to prevent a failure of justice, are excepted out of statutes." (2) At common law, the owner of a ferry has a right of action, for an invasion of his ferry franchise. 3 Wait's Actions & Defenses, p. 354, sec. 12; p. 347, sec. 4; Vol. 2, p. 108. (3) Plaintiff was entitled to recover all the damages sustained by him from the wrongful and malicious acts of defendants. *First.* Because the tort was a transitory cause of action, which might be recovered in the state where all the parties resided. *Second.* Because this court has held that in civil actions the jurisdiction of the state of Missouri extends over the entire Mississippi river so far as it forms a boundary between it and the state of Illinois. *Sanders v. Anchor Line Co.*, 77 Mo. 26; Gould on Waters [2 Ed.] sec. 35. (4) The instructions asked for by appellants seem to be so manifestly improper, irregular and inapplicable as not to merit comment. Mere abstract principles of law would be improperly given as instructions, and, though this court has decided that the city of Cape Girardeau could not grant an exclusive ferry franchise, it has also decided that Carroll had a ferry franchise, and that he could maintain an injunction on it against one who had none, and that for a violation of that ferry franchise

Carroll was entitled to recover damages. *Carroll v. Campbell*, 108 Mo. 550. (5) "The power to establish and regulate ferries is subject to the control of the states, and not the general government; and in case of boundary rivers, like the Mississippi, a ferry franchise conferred by a single state is valid without the concurrent sanction either of congress or of the state upon the opposite side of the river, or the right of landing beyond the limits of the state, by which the grant is made." Gould on Waters [2 Ed.] sec. 35, p. 87, citing in addition to the above authorities: *Hall v. DeCuir*, 95 U. S. 485, 488; *Ferry Co. v. United States*, 5 Blatch. 198; *United States v. The James Morrison*, 1 Nemb. 241, 257; *People v. Babcock*, 11 Wend. 506; *People v. T. R. Co.*, 19 Wend. 113; *Bridge Co. v. Geisse*, 38 N. J. L. 39, 580; *Ferry Co. v. East St. Louis*, 102 Ill. 560; *Chilvers v. People*, 11 Mich. 43; *Jones v. Fanning*, Morris (Iowa) 348; *Waterbury v. Laredo*, 68 Tex. 565; *Marshall v. Grimes*, 48 Miss. 27; *St. Louis v. Turnpike Co.*, 14 Mo. App. 216; *Madison v. Abbott*, 118 Ind. 337; *Ferry Co. v. Penn*, 114 U. S. 196; *Campbell v. Cramer*, 96 Mo. 75. (6) The testimony produced at the trial showed an amount of damage from loss of trade alone largely in excess of that found by the jury; that the verdict of the jury was moderate and free from prejudice, and was for the right party. This court has repeatedly held that it would not disturb a verdict for the right party for erroneous instructions that worked no harm, or where the instructions asked for by appellant were faulty, or inaccurate in expression, or for harmless error. *Keen v. Schnedler*, 92 Mo. 516; *Pritchard v. Hewitt*, 91 Mo. 547; *Fitzgerald v. Barker*, 96 Mo. 661.

BRACE, J.—By an act of the general assembly, approved March 29, 1872 (Sess. Acts, p. 328) "exclu-

sive power and right" was granted to the city of Cape Girardeau by ordinance to "regulate, tax and license all ferries within the limits of the city."

In pursuance of such grant of power, the city, by an ordinance which went into effect on the first of May, 1882, prohibited all persons "from operating a ferry within the city limits without a license, under a penalty of not less than $5, nor more than $50 for every day such ferry may be kept without a license." On the fourteenth of September, 1885, ordinance number 411 was duly enacted by the mayor and council of said city as the same appears in *State ex rel. Campbell v. Cramer*, 96 Mo. 80, 81, 82. The following sections of which it is only necessary to set out for the proper understanding of this opinion.

"Sec. 1. That, except as hereinafter set out and specially reserved and excepted, an exclusive ferry franchise for the sole purpose of keeping, running and maintaining a steam ferry over and across the Mississippi river, within the jurisdictional limits of the city of Cape Girardeau, and a strip of land on the Illinois shore, opposite the said city, and not extending beyond the line of the limits of the city aforesaid, along the bank of the Mississippi river, be, and the same is hereby, granted to Richard Carroll, of the city of Cape Girardeau, and the state of Missouri, for the term of ten years from the fourteenth day of September, 1885, said grant being in all things subject to the requirements of this and existing ordinances."

"Sec. 3. That said Richard Carroll shall pay to the city of Cape Girardeau the sum of $50 for each period of six months, during the existence of said term of ten years, and a license shall be issued in due form signed by the mayor and countersigned by the city register, for each six months as aforesaid, but no such license shall issue until the bond required

by ordinance number 369, being an ordinance entitled 'an ordinance regulating ferries,' approved April 29, 1882, shall have been approved by the mayor. And the acceptance of the first license herein by said Carroll shall be deemed an acceptance, and an agreement thereto, of all in this ordinance set out and required.

"Sec. 4. The franchise herein granted and authorized shall not be transferable without the consent of the mayor and council thereto."

In pursuance of said ordinance, on the same day, there was issued to the said Richard Carroll, the plaintiff in this action, the following license:

"*Know All Men by These Presents:* That I, George H. Cramer, mayor of the city of Cape Girardeau, in the state of Missouri, by virtue and authority of an ordinance entitled 'An ordinance granting a ferry franchise to Richard Carroll,' approved September 24, 1885, do by these presents grant and confer upon Richard Carroll the exclusive right and franchise of keeping, running and maintaining a steam ferry over and across the Mississippi river within the jurisdictional limits of the city of Cape Girardeau, in the state of Missouri, and a strip of land on the Illinois shore, opposite said city, and not extending beyond the limits of said city, along the bank of the Mississippi river, for the sole purpose of transacting a legitimate ferry business of transporting persons and property across the Mississippi river between the points hereinbefore named, so as to demand pay therefor, for the term of six months from the date thereof.

"In testimony whereof, I, George H. Cramer, mayor of the city of Cape Girardeau, have hereunto signed my official signature and caused these presents to be attested by the register of the city, and caused

the seal of the city to be hereto affixed this fourteenth day of September, 1885.

"[Seal.]                                    G. H. CRAMER,
"Attest: WILLIAM PAAR,                              Mayor.
                    "City Register."

This suit was instituted on the twelfth of July, 1887, to recover damages of defendant for intruding upon the line of his franchise. The petition charges that the defendants applied to the authorities of said city for a license to do a ferrying business from said city across the Mississippi river to the state of Illinois, which application was refused. And without having any such license "the defendants did on about the first day of November, A. D. 1885, commence doing a ferrying business from the said city of Cape Girardeau, Missouri, across the Mississippi river to the opposite shore in the state of Illinois, in rivalry and trespass of plaintiff's franchise; that on account of said rivalry the ferry tolls to which this plaintiff was justly entitled under his license were reduced to sums merely nominal, and much freight and many passengers were diverted from him, and was sent and traveled with these defendants, whereby plaintiff was greatly damaged, to-wit, in the sum of $20 per day for each day they so ran, and that defendants did so run their steamboat, the Rosalie Smoot, from the —— day of November to the twentieth day of December, A. D. 1885, when the ice in the river prevented further operations, and afterwards from the eighteenth day of January to the seventeenth day of May, A. D. 1886, in all aggregating ninety-five days and the sum of $1,900. That in order to restrain these defendants of their said trespass this plaintiff was compelled to employ attorneys and institute proceedings by injunction in the circuit court of Cape Girardeau county, Missouri, and was compelled thereby to pay out large sums of money, the necessary

and reasonable expenses of said litigation, to-wit:    For attorneys' fees, $500, and the further sum of $100 costs and other expenses.    Whereby plaintiff has been greatly damaged, to-wit, in the sum of $2,500, for which sum he asks judgment, together with his costs."

The answer of the defendants is as follows:

"Now come the defendants, by attorney, and for answer to plaintiff's petition herein filed say:    That they deny that the plaintiff has the exclusive ferry privilege from the jurisdictional limits of the city of Cape Girardeau; deny that said city had any power or authority to grant any such exclusive right or privilege, and deny that under the charter of said city it had the power to create an exclusive franchise in plaintiff or anyone else in said ferry privilege, and aver that the said ordinance of September 14, 1885, is invalid so far as it attempts to create a monopoly in the plaintiff in the ferry business, from within the jurisdictional limits of said city; admit that the city of Cape Girardeau is duly incorporated; that it attempted to create an exclusive franchise in plaintiff Carroll, and that Carroll gave bond and did the matters by said ordinance required; that he was doing a ferrying business at the time in his petition set out; admit that they, the defendants, did a ferrying business and ran the boat from the —— day of ——, 188-, to the —— day of——, 188-, and from the —— day of —— 188-, to the —— day of ——, 188-; say that they ran the same as they had a right to do under the laws and constitution of the United States, as well as of the state of Missouri; deny that plaintiff has been damaged in the sum of $1,900, or in any sum whatever, and, having fully answered, pray judgment.

"And, for a further answer, the said defendants say that they ran their boat, the Rosalie Smoot, between the states of Illinois and Missouri, across the Missis-

sippi river; that they are owners of said vessel; that the same was duly incorporated and officered as provided by the laws of the United States, and that the said attempt of said city of Cape Girardeau by ordinance to create an exclusive right in said plaintiff to do the ferrying business across the Mississippi to Illinois was and is an attempt to regulate commerce between the states, and violates section 8, clause 3, of article 1, of the constitution of the United States, which gives to congress 'power to regulate commerce among the several states,' and is, therefore, null and void.

"And, for a further answer, the defendants say that the said ordinance, set out in plaintiff's petition, is null and void because of its attempt to operate a monopoly and violate the provisions of the constitution of Missouri, in that it attempts to create an exclusive franchise; and defendants deny each and every other allegation in plaintiff's petition not hereinbefoie admitted or denied."

I.    On the trial, the court excluded the evidence offered by the plaintiff on the damage alleged for money expended in the injunction proceedings, and confined the inquiry to the immediate damage alleged to have been sustained by the plaintiff from the intrusion of defendant's steam ferry boat onto the line of plaintiff's franchise under its said grant and license.

The right of plaintiff to recover for such intrusion the defendants questioned through the whole trial of the case on the theory set out in the answer, that the ordinance was void, as being in violation of section 53, article 4, of the constitution of Missouri, prohibiting the granting of exclusive rights, privileges or immunities, and in derogation of the right of congress to regulate commerce between the states conferred by article 1, section 8, clause 3, of the constitution of the United States.

In the injunction case referred to in the petition between these same parties, which finally reached this court on appeal, these constitutional questions were maturely considered and settled so far as this court is concerned. *Carroll v. Campbell*, 108 Mo. 550. We there held that, although the ordinance, in so far as it attempted to confer upon the plaintiff an exclusive ferry privilege for the period of ten years, was unconstitutional and void; yet in so far as it authorized the grant of a temporary license to the plaintiff to operate a ferry within the city limits was valid, and that the license issued to him in pursuance thereof conferred upon him a property right, which during its continuance the law would protect against one who had not a like license from the city; and we further held that the grant of such license did not infringe upon the constitutional power of congress to regulate commerce between the states. We remain satisfied with the conclusions reached in that case upon these questions, and now proceed to the other points raised in the brief of counsel in this case.

II. Counsel for defendants contend that, as the ordinance of the city makes the running of a ferry without a license a misdemeanor, and punishes the party who violates it by a fine, the only remedy at law is under the ordinance, and in support of the proposition cite authorities, in which it is held that when ferry privileges are created by statute, and no remedy by action is given for a violation of those privileges, but a penalty is imposed upon one who violates the law by running a ferry without the license thereby required, only the penalty can be recovered. *Ward v. Severance*, 7 Cal. 126; *Almy v. Harris*, 5 Johns. 175; *Lang v. Scott*, 1 Blackf. (Ind.) 405.

By the general statutes of this state, no person is permitted to keep a ferry "so as to demand and receive

pay thereat without a license" (R. S., sec. 5672); and, if any person demand or receive pay for services as ferryman without license, he shall forfeit and pay not only the penalty imposed by section 5685 of the act, but "such person shall be liable to a civil action for all damages that may accrue to the person licensed to keep such ferry." Sec. 5686. This general provision, giving a right of action to a legally licensed ferryman against one who intrudes upon his franchise without a license, under the same general title of "ferries," has been the law of the land, not only ever since the state was organized, but even since 1806, when it formed a part of the territory of Louisiana. Territorial Laws, p. 80, where it may be found in substantially the same terms as in the present statute.

Under the territorial law of Louisiana, provision was made for obtaining license from "the court of the general quarter sessions of the peace of the district wherein such ferry may be." When the state was organized the territorial act was adopted by an act approved December 8, 1820, providing that hereafter all ferries "shall be licensed by the respective county courts in the same manner and under the same restrictions as licensed heretofore by the late territorial circuit court." Laws of Missouri, 1820, p. 701. The general law of 1824 contained this provision under the title of "ferries" (Laws of Missouri, 1825, p. 392); and the same has been continued in force in every revision since down to this date.

The suggestion that this general statute, enacted in the first place and continued in force for so many years, for the purpose of preserving to the licensee the same rights that he would have had under a common-law right of ferry, is to be limited only to those persons who are licensed by the county courts in accordance with the provisions of the chapter in which it is found,

Carroll v. Campbell.

is neither warranted by its history or terms, nor is it consistent with sound reason. A ferryman legally licensed under the laws of the state, whether by direct act of the legislature (as was formerly sometimes done), through the power conferred upon the county courts by the general statute, or under power conferred upon municipalities by general law or special charter, is within the terms and spirit of this enactment made for the protection of licensed ferryman. The plaintiff is of that class, and has his right of action by virtue of the statute.

III. It is next suggested that the judgment for damages in this case ought not to stand, because in the judgment of this court in the injunction suit sustaining the injunction, an account of the same damages is directed to be taken. There is nothing in this point. Should any judgment herein be sustained, it will be a sufficient and final statement of the account for the period covered by it, when brought to the attention of the court in the trial of that case. The plaintiff has a right to pursue all the remedies the law gives him, but he can have only one satisfaction.

IV. It appeared in evidence in the course of the trial, that the plaintiff had a partner in the ferry business by the name of Brown, during the period for which he claimed damages, and that the partnership continued until September 14, 1886, at which date, and long before this suit was brought, the plaintiff bought all his interest in the concern, and assumed all its liabilities. On this testimony the defendant asked the court to instruct the jury, if they found it to be true, to find for the defendant; to do which the court refused. There was no error in this ruling.

It is true by the terms of the ordinance the plaintiff's license was not transferable without the consent of the mayor and council. The plaintiff did not transfer

it, or attempt to transfer it, but personally operated the ferry under it. It was his property to be legitimately used in the business for which it was obtained and which it authorized; and, if in the risks and profits of that business, he chose to associate another with him, this was no person's concern, but his own, so long as he faithfully performed his obligations to the city and the public. An injury to the business, protected by his franchise, by which its profits were diminished, was an injury to him; and if, when he commenced his suit, he had acquired all the interest of his partner in the business he was the only person entitled to the earnings which would have been legitimately realized in such business but for such injury; he was the only real party in interest, and the only one entitled to sue for the damages for such injury.

V. For the plaintiff the court gave the following instructions: "The court instructs the jury that in this case the measure of damages is the difference between the amount actually received by plaintiff as the earning of his boat during the time the defendants were operating their boat in opposition thereto, and the amount that the trade and traffic during the same period would reasonably have yielded had there been no opposition."

"The court instructs the jury that, if from the evidence you believe that plaintiff, Richard Carroll, from the eighth day of January to the seventeenth day of May, 1886, inclusive, held and owned the exclusive ferry franchise to do a ferrying business from the jurisdictional limits of the city of Cape Girardeau, in the state of Missouri, to a strip of land opposite said city in the state of Illinois, and was carrying on the ferrying business, and that, during the time hereinbefore set out, the defendants, without license, carried on a ferrying business in opposition to plaintiff and between the points herein named, and that by reason

of said opposition plaintiff's business was diverted from him, and he was compelled to carry freight and passengers at a merely nominal price, and was by reason thereof damaged, then your verdict should be for plaintiff in such sum as under the evidence you shall believe he has been damaged, not to exceed $2,500."

The verdict of the jury was for $1,100.

Plaintiff's license expired on the fourteenth of March, 1886. The vice of these instructions is, that they submit to the jury the legal proposition upon which plaintiff's right to recover hinged, and which should have been decided by the court; and authorized a recovery for earnings plaintiff would have made between the fourteenth of March and the seventeenth of May, 1886 (two months and three days); during which time it is not shown that the plaintiff had a license from the city. Thus the plaintiff was permitted to recover for nearly twice the time, and in nearly twice the amount, which under the evidence he showed himself entitled to. This happened, of course, under the mistaken theory that the plaintiff had an exclusive franchise for ten years from the city.

The instruction on the measure of damages is otherwise unobjectionable. In this connection it may be as well to remark that we understand the language in the opinion in the injunction suit, *supra*, directing an account to be taken, to mean "of tolls," which the plaintiff would have earned but for the unlawful intrusion of defendants upon his franchise. We find no error in the refusal of the court to give the instructions asked for by the defendants, but, for the errors aforesaid in plaintiff's instructions, the judgment will be reversed and the cause remanded for new trial. All concur.