# VETTE, Appellant, v. MERRELL DRUG COMPANY, Respondent.

## St. Louis Court of Appeals, March 23, 1909.

1. **SALES: Leases: Conditional Sale.** An instrument purporting to be a lease of a storeroom, fixtures and stock of goods to the lessees, for a fixed period, in consideration of a certain sum payable in monthly installments, to which instrument was added a second part or contract in the form of a proposal by the lessees, accepted by the owner, to purchase the stock and fixtures and the good will of the establishment at the expiration of the lease, together with certain stipulations about the termination of the lease on giving notice, the posting of earnest money to be forfeited for failure to comply with the agreement, the giving of a chattel mortgage to secure certain payments and other stipulations, is examined and, *Held*, the instrument was not a lease and an option to purchase, as it purports to be on its face, but taken as a whole was a conditional sale executed in that form for the purpose of evading the statute regarding conditional sales.

2. ————: **Conditional Sale: Recording.** Our statute, section 3412, Revised Statutes 1899, requiring sales, etc., of personal property to be evidenced by writing, executed, acknowledged and recorded, otherwise making them void as to creditors and purchasers in good gaith, does not apply to one who is not a purchaser or a creditor of the transferee; a guarantor of the performance of the conditions of such an instrument on the part of the vendee was not under the protection of the statute.

3. ————: ————: **Reclaiming Property by Seller.** Section 3413, Revised Statutes 1899, providing that it shall be unlawful for the seller of property upon condition to retake the same without tendering back to the purchaser what he has paid, less compensation for use of the property, does not *require* the seller to reclaim and pay back part of the purchase price, but only *prevents* him from reclaiming without a tender. A guarantor of the performance of a conditional sale by the purchaser would not be released on account of the failure of the seller to reclaim.

4. **GUARANTY: Rescission: Bankruptcy: Allowance of Claim.** Where the seller in conditional sale of a stock of goods procured the allowance before a referee in bankruptcy of sums to be paid by the purchaser, he did not thereby elect to rescind

the contract of purchase so as to release the guarantor of such payments and prevent an action to recover the same against the guarantor; he could have different judgments for the same breach of the contract, but could only have one satisfaction.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

REVERSED AND REMANDED.

*Jamison & Thomas* for appellant.

(1) Defendant's guaranty of Solomon & Wise's contract is an absolute guaranty. Airey v: Pearson, 37 Mo. 424; Wright v. Dyer, 48 Mo. 525; Singer Mfg. Co. v. Hester, 71 Mo. 91; Globe Printing Co. v. Bickley, 73 Mo. App. 499; Osborn v. Lawson, 26 Mo. App. 549; Hill v. Combs, 92 Mo. App. 242; Redfield v. Haight, 27 Conn. 31; McDonald v. Harris, 75 Ill. App. 111; Yager v. Title Co. (Ky.), 66 S. W. 1027; Pierce v. Merrill, 128 Cal. 464; Hoey v. Jarmon, 39 N. J. Law Rep. 523; Prentiss v. Garland, 64 Maine 155; Gaston v. Ashley, 1 Ark. (1 Pike), 325; Burnham v. Gallentine, 11 Ind. 295. (2) The guaranty being absolute, negligence or failure on the part of plaintiff to enforce his rights against Solomon & Wise or against the property would not constitute any defense to this action. Hawkins v. Ridenhour, 13 Mo. 125; Barker v. Scudder, 56 Mo. 272; Burge v. Duden, 105 Mo. App. 8; Warder, etc. Co. v. Johnson, 114 Mo. App. 571; Brown v. Curtiss, 2 N. Y. (2 Comst.) 225; Sample v. Martin, 46 Ind. 226; Penny v. Crane, 80 Ill. 244; Welch v. Walsh, 177 Mass. 555, 83 Am. St. Rep. 302; Roberts v. Hawkins, 70 Mich. 566; Smidel v. Lewellyn, 3 Phil. (Pa.) 70; Cowles v. Peck, 55 Conn. 251; Jackson v. Decker, 43 N. Y. Supp. 957; Huntress v. Patton, 20 Me. 28. (3) But even if the lease and the option contracts should be considered together, and should together be construed to be a contract of conditional sale of personal property, defendant would not

Vette v. Drug Co.

thereby be absolved from its guaranty. R. S. 1899, secs. 3412, 3413; Mount Calvary Church v. Albers, 174 Mo. 331.

*Lee W. Grant* and *P. B. Kennedy* for respondent.

(1)    The parties treated the alleged "lease" and contract of sale as one instrument; the assignment by Glascock to Vette treats it as one contract and not two contracts.    The whole instrument is a conditional sale contract for $3,860, which ceases to be a conditional sale contract and becomes absolute upon the payment of $800 (the value of the stock of goods) and the eight months' rent, $1,000.    As Vette never offered to repay any portion of the amount paid by Solomon and Wise on account of the purchase, to-wit, $763.60, he never had the right to retake possession.    The calling of the instrument a "lease" does not change its character.    Loeffler v. Damoree, 75 Mo. App. 207; R. S. 1899, secs. 3412, 3413. (2)    After the bankruptcy, Vette had either of two remedies.    He could affirm the sale as an absolute sale and prove up his claim for the full amount of the purchase price due under the contract, or he might have elected to rescind the contract by reason of nonpayment of installments.    He elected the latter remedy by filing his petition before the referee, demanding the return of the property.    The two remedies are inconsistent, because one is based on an affirmance of the contract transferring the title, and the other is exactly the contrary. Any action that proceeds upon the theory that the title of the property remains in plaintiff is inconsistent with those which proceed upon the theory that title is passed to the defendant.    Conrow v. Little, 115 N. Y. 387; Taussig v. Hart, 49 N. Y. 301; Carroll v. Fethers, 102 Wis. 436; Ermeling v. Gibson, 105 Ill. App. 196.    (3)    The prosecution of one remedial right to judgment, whether the judgment is for or against plaintiff, is a decisive act which constitutes a conclusive election barring the

subsequent prosecution of the inconsistent remedial rights. Booker v. Frozier, 99 Mo. 325; Nanson v. Jacob, 93 Mo. 331; Welch v. Carder, 95 Mo. App. 41. (4) Plaintiff cannot pursue in the same suit inconsistent remedies or ask for two kinds of relief which are inconsistent with one another; so here plaintiff cannot claim a return of the value of the stock of goods and also ask payment for the balance due on the purchase price of the same. Iron Co. v. St. Louis, 138 Mo. 608. If a party knows the facts, and knowing the facts, makes an election of remedy, such election will bar him from pursuing an inconsistent remedy even though he does not prosecute the case to judgment. Dry Goods Co. v. Warden, 151 Mo. 582, distinguishing and explaining Johnson-Brinkman Co. v. Railway, 126 Mo. 344. (5) Whatever releases the principal releases the guarantor, and where there has been a judgment in favor of the principal, the guarantor is released. Appellant, having been defeated before the referee in his effort to retake possession of the stock of goods is estopped from recovery here on that item. Railway v. Smith, 27 Mo. App. 371. For the trustee has no greater rights than the bankrupt. Yorke Mfg. Co. v. Cassell, 201 U. S. 352.

STATEMENT.—Prior to the facts to be related, William V. Glascock was the proprietor of a drugstore at No. 307 North Twelfth street in a room which he had leased from the Star Building Company. The building of which the room was a part, was known as the Star Building, and Glascock's establishment as the Star Pharmacy. His lease of the room would expire April 30, 1909. On October 1, 1904, he entered into a contract with Philip C. Wise and Leo K. Solomon, which will be copied infra. Defendant, the J. S. Merrell Drug Company, guaranteed the fulfilment of a portion of said contract as will appear, and this action is against said company on its guaranty, said Solomon & Wise having failed to perform that portion of the contract with Glascock

which the drug company had guaranteed. Vette is the plaintiff under an assignment of the contract to him by Glascock. The whole contract between Glascock and Solomon & Wise, the guaranty of defendant to part of it, the assignment to Vette and that portion of the contract between Glascock and Solomon & Wise, which looks like an appendix to the instrument as originally drawn, but purports to have been executed on the same day, are as follows:

"This Article of Agreement made and entered into this 1st day of October, 1904, by and between William V. Glascock of the city of St. Louis, Mo., party of the first part, and Philip C. Wise and L. K. Solomon, also of the city of St. Louis, Mo., parties of the second part,

"*Witnesseth*: That the said party of the first part has this day leased to the said parties of the second part the certain storeroom known as No. 307 North Twelfth street, in the city of St. Louis, Mo., together with all fixtures, soda fountain, cash register and the stock of fresh, up-to-date drugs, sundries, cigars, candies, etc., to the value of $800, for the period of eight months from the first day of October, 1904, on the following terms, to-wit: For the use and rent thereof the said parties of the second part hereby promise to pay to the said party of the first part, or to his order, the sum of $1,800, for the whole time above stated, and to pay the same in equal monthly installments of $225 per month, on the last day of each month (not in advance), the first payment to be made on the 31st day of October, 1904.

"It is especially agreed and understood that the said parties of the second part reserve the right to cancel this lease at any time before the termination as above stated, by giving to the said party of the first part a written notice of their intention to do so at least ten days before the expiration of the current month of their tenancy, and upon giving said notice, they shall be released from all liabilities on account of rents, except for the

current month. It is also specially understood and agreed that at the time the said parties of the second part shall turn over to the said party of the first part said store with all fixtures and stock therein contained that there shall be at least $800, at wholesale value, of the stock, drugs, cigars, sundries, etc., and the said stock of drugs, etc., shall be fresh and up-to-date, the same as now contained in said store.

"The said parties of the second part agree not to sublet said premises, nor allow any other tenant to come in with or under them, without the written consent of said party of the first part, and that they will replace or repair all injuries or damages to the fixtures by them during their occupancy, or shall pay for the same, at the expiration of this lease they will quit and surrender up to the said party of the first part the peaceable possession thereof.

"It is hereby understood that all expenses for light, telephone, etc., shall be paid by the said parties of the second part.

"In witness whereof the parties have set their hands to three copies, one copy to be retained by the said party of the first part, one copy to be held by said L. K. Solomon, and one copy to be held by the J. S. Merrell Drug Co., a corporation.

> "W. V. GLASCOCK,
> "PHILIP C. WISE,
> "LEO K. SOLOMON.

"In consideration of the execution of the above lease and the sum of one dollar to us in hand paid, we hereby guarantee the fulfillment of the covenants of the above lease, subject to privilege of cancellation as herein stated.

> "C. L. BIESER,
> "J. S. MERRELL DRUG CO.,
> "HENRY STOLLE, Treas.

"Referring to the above lease it is proposed by the parties, Philip C. Wise, L. K. Solomon and William V. Glascock, that they, the said Philip C. Wise and Leo K. Solomon will buy from the said William V. Glascock, and the said William C. Glascock will sell to Philip C. Wise and Leo K. Solomon at the expiration of this lease (and after they, the first named parties, have paid in the full amount of $1,800), the entire contents of said drugstore, and they, the said Leo K. Solomon and Philip C. Wise, hereby agree to pay for such stock and fixtures and good will, the full sum of three thousand and sixty ($3,060) dollars, (in addition to the above $1,800 rental), and they hereby deposit with the said William V. Glascock the sum of two hundred ($200) dollars, as earnest money, to be applied in part payment for the above-named business, and they hereby agree to execute their note, secured by chattel mortgage, on the entire contents of the drugstore at No. 307 N. Twelfth street, in the city of St. Louis, Mo., in the sum of $2,860, with interest from June 1, 1905, at the rate of six per cent per annum, said note to be paid in monthly installments of $150 each, first payment to be made on the first day of July, 1905, and in the event that the said Solomon and Wise should fail to pay in the full amount of $1,800 as hereinbefore stated, or in case they fail to execute said chattel mortgage as above stated, then the said $200 hereby deposited shall revert to the said Glascock as liquidated damages. It is specially understood that the said chattel mortgage to be executed shall include all stock and fixtures contained in said drugstore, and all stock and fixtures that may be added to said drugstore from time to time; and the said Solomon and Wise shall guarantee that the stock shall not be less than $800 in case the stock and fixtures are turned back to William V. Glascock.

"In case the said Solomon and Wise should fully comply with the conditions of the lease of the store, stock and fixtures as hereinbefore agreed, the said W. V. Glascock promises and agreed to give a good, sufficient and

clear bill of sale to the said Wise and Solomon, free from all liens of every class and character covering the above described stock and fixtures, except a chattel mortgage on soda fountain for a balance of $750 that will be due on purchase price, which amount may be assumed by said Solomon and Wise and deducted from note for $2,860 to be executed for balance of purchase price and he will deliver to them a sublease for a period ending April 30, 1909, at the same annual rental he is charged, and the said Solomon and Wise hereby agree that they will execute with the said W. V. Glascock, a lease on the said premises for the above period at a rental not exceeding $125 per month, payable in advance, and it is agreed that a clause shall be inserted in the chattel mortgage to be executed by said Solomon and Wise, under which the stock and fixtures shall be held as security for the payment of the above rent as well as for the payment of the aforementioned $2,860.

"PHILIP C. WISE,
"LEO K. SOLOMON.

"I hereby accept the above proposition, and further agree that I will pay to said Solomon and Wise the sum of one thousand dollars as liquidated damages, in case I should fail to make the bill of sale and lease as above provided.                "W. V. GLASCOCK."

"St. Louis, Mo., Dec. 20, 1904.

"For value received, I hereby assign and sell to John H. Vette, all my right, title and interest in and to the contract hereto attached, and all my interst in drugstore known as Star Pharmacy in Star Building, St. Louis, Mo.                "W. V. GLASCOCK.

"It is understood between the parties to the within lease, that in case of the total or partial destruction by fire of the premises leased, including the stock and fixtures therein described, then the same shall be restored within a reasonable time by the lessor at his expense and the rent shall abate for the period during which the premises, stock and fixtures are being put in a tenant-

able condition. It being further understood between the
parties that the lessor in case of loss or partial loss by
fire shall replace the stock with at least $800 worth of
fresh and merchantable drugs as selected by the lessees;
and the fixtures with others of the value of $2,950, to be
selected by the lessees. This clause to be signed in tripli-
cate and pasted to and made a part of a lease made this
first day of October, 1904, between William V. Glascock,
lessor, and Philip C. Wise, and Leo K. Solomon, lessees.

"W. V. GLASCOCK,
"PHILIP C. WISE,
"LEO K. SOLOMON."

Pursuant to their undertaking as evidenced in the
foregoing instrument, Solomon & Wise paid Glascock
installments of money as follows: $225 on the last days
of October, November, and December, 1904, and as Glas-
cock had assigned to Vette on December 20th, they after-
wards paid Vette two installments on the last days of
January and February, 1905. They did not pay an in-
stallment in March, but on April 4th, paid $125 on the
March installment, leaving $100 unpaid. Plaintiff says
they also paid $63 on the debt for the soda fountain men-
tioned in the agreement, and they testified to paying the
Star Building Company $250 for rent for May and June,
and the May rent if paid should go as a credit on the con-
tract between them and Glascock, for the eight months
would end May thirty-first. This would leave the rent
for April unpaid and make the total payments of Solo-
mon & Wise on the stipulation to pay $1,800, $1,438.60,
leaving a balance of $361.40; whereas if the May rent
was not paid, the total payments were $1,313.60, leaving
a balance of $486.40. When they found themselves un-
able to pay the full installments, Vette said to pay $125,
due as the monthly rental of the room under the lease
held by Glascock from the Star Building Company, and
he (Vette) would wait for the remainder of the install-
ments. The evidence goes to show demands by Vette in
April and July for the possession of the premises, in-

.cluding the stock of merchandise. In the latter month and on the sixth day of it, a petition in bankruptcy was filed in the Federal Court against Solomon & Wise, and on July 7th they turned over the keys of the room to the agent of the building company. During the latter part of July they were adjudged bankrupts and their property, including the fixtures and goods in question, was placed in charge of a trustee pursuant to the bankruptcy act. Vette filed a petition before the referee in bankruptcy claiming the fixtures and goods as owner, and the referee ordered the fixtures turned over to him, but refused the petition regarding the merchandise. The Federal District Court affirmed this ruling of the referee in regard to the merchandise, the matter having been certified to said court. Afterwards Vette presented a demand against the bankrupt estate for $1,350, the amount for which he sues in this case and composed of the same items, which demand was allowed by the referee. On December 17, 1906, plaintiff instituted the present action against the Merrell Drug Company on its guaranty. The petition alleges the trustee in bankruptcy had been discharged from his trust and insufficient funds had come into his hands to pay any of the demands allowed against the bankrupt estate of Solomon & Wise; that plaintiff never has received anything on account of said bankruptcy proceeding, though Solomon & Wise have been discharged from all their liabilities by the decree of the Federal Court. Other facts are stated in the petition substantially as we have set them out, and it is charged the Drug Company is indebted to plaintiff by reason of the facts alleged, in the sum of $1,350, composed of the following items: rent of storeroom for the months of March, April and May, $225 a month, or $675, and for the stock of goods turned over to Solomon & Wise under their contract with Glascock and not returned by them in accordance with the contract, $800, or a total of $1,475; less a credit for $125 paid April 4th on the March installment; wherefore plaintiff prayed judgment for $1,-

Vette v. Drug Co.

350 against the drug company. The answer admitted the execution of the instrument declared on and averred it was one entire contract between Solomon & Wise and Glascock, though it appeared to consist of two contracts. The answer further admitted the bankruptcy proceeding against Solomon & Wise, surrender of the fixtures and furniture in the storeroom to plaintiff, refusal of the officials in bankruptcy to turn over the stock of merchandise to him, failure of the estate to pay a dividend and discharge of the bankrupts. It was averred Solomon & Wise had paid Glascock and plaintiff on the contract sums of money amounting in the aggregate to $1,763.60; further, that when the contract was arranged, all the parties to it contemplated the stock of merchandise should be sold in the usual course of retail trade by Solomon & Wise, and said firm had sold nearly all of the original stock prior to their bankruptcy. It is further averred that if plaintiff ever had any right to the possession of the goods, he failed and neglected to enforce his right in a reasonable time, or until after Solmon & Wise had been adjudged bankrupts; took no appeal from the refusal of the referee to turn over the goods to him, or from the order of the district court affirming the decision of the referee; wherefore defendant was relieved of liability under its guaranty. The court after passing on requested declarations of law, entered judgment for defendant and plaintiff appealed.

GOODE, J. (after stating the facts).—Defendant's counsel insist the contract between Glascock on one part and Solomon & Wise on the other was of such a nature that their client was exonerated from liability on it in consequence of plaintiff's procuring an allowance by the referee in bankruptcy of the present demand against Solomon & Wise. They say Vette, by demanding and getting the furniture and fixtures and demanding also the goods, elected to rescind the entire contract and hence released defendant as guar-

antor for the performance of any part of it. Plaintiff's counsel insist there was a contract of letting which was independent of the one for the sale of the property, and that defendant guarantied performance of it whether a sale was consummated under the other contract or not. It is conceded defendant and its co-guarantor Bieser, guarantied fulfilment only of those promises made by Solomon & Wise which preceded their signatures, and this preceding matter purported to be a lease of the storeroom, furniture, fixtures and stock of goods for the eight months from October 1, 1904, to June 1, 1905, upon certain terms, to-wit: the parties of the second part (Solomon & Wise) were to pay Glascock $1,800 for the whole term in monthly installments of $225 on the last day of each month. The middle paragraph of the so-called lease permitted Solomon & Wise to cancel the contract at any time prior to its termination, by giving Glascock written notice of their intention to do so, ten days before the expiration of the current month; further providing that upon giving said notice, Solomon & Wise should be released from all liability for rent except for the month. This paragraph stipulated that if Solomon & Wise turned over the premises, fixtures and merchandise to Glascock pursuant to the right accorded them to do so, there should be at least $800 of merchandise at wholesale on hand, and the same should be fresh and up-to-date as it was at the date of the contract. The next paragraph bound Solomon & Wise not to sublet the premises without the consent of Glascock, to replace and repair all breakage and damage to fixtures during their occupancy or pay for same, and quit and surrender possession to Glascock at the expiration of the term; also required the parties of the second part to bear the expense of telephone and lights. Part of the undertakings of Solomon & Wise were to be secured by a guaranty and part by a chattel mortgage, the instrument provides, and those stipulations we have mentioned were what de-

fendant guarantied. The stipulation that the stock should be of the value of $800 if it was returned to Glascock, refers to a return of it upon the cancellation of the alleged lease by Solomon & Wise before the end of the term. There was no stipulation for re-delivery of the merchandise to Glascock or his order after the eighth months had expired; for we think such is not the effect of the following language:

"It is specially understood that the said chattel mortgage to be executed shall include all stock and fixtures contained in said drugstore, and all stock and fixtures that may be added to said drugstore from time to time; and the said Solomon & Wise shall guarantee that the stock shall not be less than $800 in case the stock and fixtures are turned back to William V. Glascock."

That clause refers only to the value of the stock if turned back inside of eight months as previously provided. As Solomon & Wise never attempted to terminate the alleged tenancy, but remained in occupancy until July, 1905, or more than a month after the term had expired, neither Glascock nor plaintiff as assignee, became entitled, by virtue of said proviso of the contract, to a return of the merchandise. Whether return might be demanded under our statute will be determined later. But defendant bound itself *inter alia* for the payment by Solomon & Wise of $1,800 for the entire term. The whole sum has not been paid, and defendant would be liable for the balance if the covenants it guarantied were contained in a separate contract of lease. If the whole contract was simply one for the conditional sale of the property, defendant's liability must be discussed from another point of view. The second part of the agreement between Glascock on one side and Solomon & Wise on the other, was in the form of a proposal by the latter, accepted by Glascock, to purchase the stock, fixtures, furniture and good-will of the establishment, and to execute to them a sublease of the room for a term to end April 30, 1909, the same date Glascock's lease ended, and for the

137 App.—16

Vette v. Drug Co.

same rental he paid; that the price should be $3,060 in addition to the $1,800 "rental;" that a chattel mortgage should be executed by Solomon & Wise to secure the payment of $2,060 in monthly installments of $150 each, and for the deposit with Glascock of $200 which, if the agreement was all carried out, should be credited on the purchase price, and when added to the $2,860 would make up the $3,060, or the amount of the purchase price above the $1,800 "rental," which "rental" the agreement assumed would have been paid during the prior 8 months.

Several things stand in relief on this agreement: firstly, that Solomon & Wise had no right to purchase the property until they had carried out the first stipulation by paying the full $1,800 for which defendant stood sponsor; secondly, if they failed to carry out the agreement as a whole, and all the terms of it, the two hundred dollars put up with Glascock should go as liquidated damages to him; thirdly, if they abandoned the enterprise during the first eight months and turned the stock back to Glascock, they would lose it, what they had paid on it, and also the $200. Was the first portion of the contract what it purports on its face to be, to-wit: a demise of Glascock's leasehold, fixtures and merchandise, and the second part a contract giving Solomon & Wise an option to purchase the property at the end of the term, or was the contract as a whole a conditional sale of the leasehold, executed in a peculiar form to evade our statutes regarding conditional sales? We think the latter is the correct conclusion. All parts of the contract purport to have been executed on the same day, including the appendix to provide what should be done in the event the property was burnt, the receipt of Glascock for $200, expressed to be "earnest money as per contract Oct. 1, 1904," and the recital in the contract said sum was "to be applied in part payment for the above named business." The monthly installments called for in the first part of the agreement were made up of the rental due the Star Building Company for the storeroom, of

$125, plus $100 on the price of the stock. That is, $1,000
of the $1,800 to be paid by Solomon & Wise, was for
room rent and $800 went toward paying for the furniture,
fixtures and merchandise. They were to pay $3,060 more
under the second portion of the agreement, and were
then to take a lease of the room for the balance of Glas-
cock's term at the same rental he paid. It was in testi-
mony the parties in negotiating the transaction put an
estimate on the stock, approximating its value at eight
hundred dollars, and the concluding portion of the con-
tract shows the fixtures were valued at $2,950. These
figures show a discrepancy of one hundred and ten dol-
lars as compared with the purchase price, but that cir-
cumstance is slight in comparison with others. The par-
ties regarded and treated the arrangement between them
as one contract. Their stipulations were put in a single
instrument, and in his written assignment to Vette, Glas-
cock spoke of what he assigned as a contract, using the
singular instead of the plural number. The oral testi-
mony shows, too, the parties contemplated a sale from
the beginning of their negotiations. It seems impossible
to hold the first portion to be a lease, though leases of
personal property are not unknown to the law. [1 Mc-
Adam, L. & T. (3 Ed.), 258.] The delivery of a stock of
merchandise by its owner to another person, to be dis-
posed of in the ordinary course of retail trade, is an act
incompatible with a demise, because incompatible with
retention of a reversion of the property to vest in the
owner at the end of the term. [1 McAdam, 127.] The
contract looks like a conditional sale which was to be-
come absolute on the execution of a chattel mortgage
and the performance of other promises by Solomon &
Wise, including the taking of a lease. If so, as the mat-
ter never was consummated as agreed, it remained in its
first form.

Treating it, therefore, as a conditional sale, it is not
clear how this conclusion affects the liability of defendant
upon its guaranty. Our statutes require sales, leases,

rentings, hirings and other deliveries of personal property by the owner to another, on condition that the title shall not vest in the transfer until a certain sum is paid, to be evidenced by a writing, executed, acknowledged and recorded as provided in cases of mortgages of personal property, and declare if this is not done, the condition regarding the title remaining in the original owner is void as to creditors of the transferee and purchasers from him in good faith. [R. S. 1899, sec. 3412.] The instrument in question with its first part in the form of a lease, likely was drawn in evasion of this statute; but defendant is neither a purchaser nor a creditor of Solomon & Wise and, moreover, was apprised of their arrangement with Glascock and a party to it; therefore is not within the protection of the statute. Section 3413 says whenever property is sold, leased, rented, hired or delivered in the manner provided in section 3412 (i. e. so as to retain the title in the owner until payment) it shall be unlawful for the owner to take possession of the property without refunding to the transferee or any one receiving the property from him, what has been paid on the price, after deducting reasonable compensation for the use of the property, not to exceed twenty-five per cent of the amount paid and allowing for reasonable breakage and damage done while the property was out of the possession of the owner. Said statute is invoked in defense of the present action, in connection with the fact that Vette never offered to pay either Solomon & Wise or the trustee in bankruptcy, seventy-five per cent of what had been paid by the former. This proposition has no relevancy to the liability of defendant. The statute does not compel the owner of property to reclaim it and tender back part of the purchase price, but only prevents him from reclaiming without a tender. We cannot understand why Vette should lose the benefit of the guaranty, which was taken as additional security for performance by Solomon & Wise, because he. did not choose to avail himself of the statutory remedy. More-

over, this decisive fact remains: practically the whole stock of goods had been sold by Solomon & Wise, and it was intended from the first by all parties concerned, including defendant, it should be. Neither Glascock nor Vette had any title to the replenishments or any right under the statute to take them with or without a tender.

Vette procured an allowance of the demand before the referee in bankruptcy and it is argued his doing so precludes him from using the present remedy. The idea is this: by proceeding in bankruptcy for an allowance and for the return of the furniture and fixtures, he elected to rescind the contract with Solomon & Wise, thereby releasing defendant from its guaranty of performance of the contract. This argument is weak. As far as the allowance of the referee is concerned, it covered part of what Vette is entitled to judgment for in the present case, but the obligee of a contract to which there are several obligors, may have different judgments against them for a breach, but can have only one satisfaction. [Carroll v. Campbell, 110 Mo. 557.] If defendant and Solomon & Wise were copromisors, plaintiff might obtain separate judgments against them, and certainly he is not precluded from a judgment against defendant, which bound itself in a distinct contract, by the fruitless allowance against the bankrupts. On what theory the referee in bankruptcy ordered the furniture and fixtures turned over to Vette and the United States District Court affirmed the order, we are not apprised. It may be because the instrument executed by Solomon & Wise and Glascock was construed to be both a contract of lease and an option to purchase. The fact that the right of other creditors to take advantage of the non-recording of the contract, if it was a sale on condition, was not enforced, indicates this theory was followed. [Missouri, etc., Plow Co. v. Spilman, 117 Fed. 746; Parlin, etc., Co. v. Hord, 78 Mo. App. 279; Oyler v. Renfro, 86 Mo. App. 231.] But said right may not have been asserted for the reason that the amount paid by Solomon & Wise, even if the

transaction was regarded as a sale, was less than the value of the goods and the rent of the room while they occupied it. The contract shows the parties grouped together the rent for eight months and the stock, in arranging the price, placing the former at $1,000 and the latter at $800; whereas the furniture and fixtures were priced at about $3,000. Now though the payments made by Solomon & Wise were, legally speaking, on the whole purchase price, they were regarded by the parties as having been made on the rent and stock only, and may have been so treated in the bankruptcy case; thereby leaving the price of the fixtures wholly unpaid, so that Vette could reclaim them without tendering any sum. It can be shown by a computation which we will not introduce into the opinion, that on the theory of a conditional sale, if we remember Vette could get back no part of the merchandise, the Federal tribunals secured what was equivalent to substantial compliance with section 3413 when they relinquished the furniture and fixtures to him without a tender. Those matters are conjectural and immaterial. According to our view, the sale of the furniture and fixtures fell, as to creditors, within the provisions of section 3412, and after the sale, the property so far belonged to Solomon & Wise that in strictness of law, they could not be reclaimed by Vette without complying with section 3413. But that they were relinquished to him without compliance with said section, is a matter which touches the rights of Solomon & Wise and their creditors, not the liability of defendant on its guaranty. If the creditors and the bankruptcy officials chose to waive the statute, this redounded to Vette's benefit, but nothing he did in the bankruptcy proceeding estops him now. As defendant bound itself for the payment of $1,800 by Solomon & Wise, who are utterly insolvent, and this debt has not been paid in full, defendant must respond for the remainder.

The judgment is reversed and the cause remanded. All concur.